237 So.2d 644

**MITCHELL, HUTCHINS & COMPANY, Inc.**

v.

**Herbert LUNSFORD.**

**1 Div. 582.**

Supreme Court of Alabama.

June 25, 1970.

Caffey, Gallalee & Edington, and Horace Moon, Jr., Mobile, James R. Owen, Bay Minette, for appellant.

Chason, Stone & Chason, and E. E. Ball, Bay Minette, for appellee.

PER CURIAM.

Jury and verdict, followed by judgment, for defendant in a suit on common counts filed by appellant against appellee in the Circuit Court of Mobile County, and upon plea in abatement, the suit and papers were transferred to the Circuit Court of Baldwin County.—Act No. 76, Special Session of the Legislature, 1961, p. 1953; Title 7, § 64(1), Recompiled Code 1958, Cumulative Pocket Supplement. This appeal is from the judgment for defendant. Motion for new trial was denied.

There are five Assignments of Error. Assignment 1 refers to the trial court's refusal to give plaintiff's written instruction to the jury that if they believe the evidence they must find for the plaintiff on Count 1. Assignment 2 refers to a like refusal with respect to Count 2. The same is true as to Count 3. Assignment 4 charges error on the part of the trial court in refusing to grant plaintiff's motion for a new trial. Assignment 5 charges error by the court in giving defendant's written instructions with hypothesis as to Count 2 of the complaint. This count charges money paid by the plaintiff at defendant's request.

It appears from the record that plaintiff (appellant) is a non-resident corporation engaged as a grain broker having connection with a commodity exchange—The Chicago Board of Trade. This corporation buys and sells grain futures for its customers. On April 13, 1966, defendant (appellee) through plaintiff, sold short 10,000 bushels of November Soy Beans at $2.77¼ a bushel; on April 27, 1966, he sold short an additional 10,000 bushels of November Soy Beans at $2.83⅛ a bushel;

then on June 3, 1966 he sold short a third 10,000 bushels of November Soy Bean futures at $2.85⅝. Selling short means, according to plaintiff's witness, "It is a contract where you sell now with the intention of delivering when you harvest your crop. * * * It is merely selling ahead—ahead of when you actually cut your soy beans and when they are ready to mature and cut and then you make delivery."

Witness Keith for plaintiff testified that these beans were sold on margin for defendant who at the time had on deposit with plaintiff the sum of $5,112.50. The witness further testified that in June, 1966 the price of soy beans was going up. The reason was dry weather which meant that it would cut into the yield; consequently there would be less supply at harvest time. As the price went up the deposit margin with plaintiff was depleted or gradually eaten away. Witness testified that defendant was mailed notice from the Chicago office that additional money was needed to keep the account in good standing. Witness testified that on July 7, 1966, he called defendant at his home in Foley, when defendant told him that he was mailing check to cover margin. He had another telephonic conversation with defendant about the account on July 12, one on July 13, and one on the 14th of July, 1966. These conversations were pretty well identical with the other. He insisted on maintaining his position in the market. Introduced in evidence was a telegram, or copy, dated July 14, 1966, which defendant admitted sending. This telegram to plaintiff in Memphis stated "MARGIN CHECK IN MAIL RAINING". This check never arrived.

The increase in soy bean prices resulted in a loss of $13,819.00. On July 18, 1966, plaintiff closed out the account by buying in the short sale of soy beans for defendant's account. Plaintiff paid The Chicago Board of Trade $8,706.50 out of its own pocket—an amount in excess of defendant's deposit with plaintiff. Defendant never repaid plaintiff. This amount with interest is still due and payable since July 18, 1966. This is the substance of the testimony of plaintiff's witness.

While it is true there is no evidence in this case of usage and custom with respect to trading in grain futures on The Chicago Board of Trade, we think a positive inference can be drawn from the evidence of defendant that he was acquainted with his responsibility and duty to put up requisite margin with his broker (plaintiff) in grain futures sold or bought on The Chicago Board of Trade. He admitted that he had the selling transaction with plaintiff. He also admitted that plaintiff called on him to put up more margin to cover the losses on the futures he had sold and that he failed or refused to do so. He admitted sending the telegram, supra. He also admitted that he had not mailed the check. The telegram was false. Not having received the check, plaintiff, on July 18, 1966, closed defendant's account as above noted. Defendant also admitted during the trial that he kept promising to send margin check so that plaintiff would keep him in the market. He also admitted that for about 15 years he had been "dealing in this kind of business". He testified that he told plaintiff to keep him in; also he testified that he knew if the market went up that either he or plaintiff had to advance the money; that plaintiff could not keep him unless he or plaintiff put up some money. We quote specific questions and answers:

"Q. What happens, Mr. Lunsford, if you don't send the margin check to your broker?

"MR. STONE: Object to the question, may it please Court.

"THE COURT: Overrule the objection.

"MR. STONE: Except.

"A. It is according to who you are doing business with.

* * *

"Q. You knew if the market went up either you or them one had to advance the money, is that right?
* * *

"MR. STONE: May it please the Court, I think that is argumentive—I hate to keep objecting.

"THE COURT: He says he told them to keep him in. I think the jury is entitled to know how they are going to keep him in. I think that is what he is asking.

"MR. STONE: There is testimony that he was dealing with his own agent.

"THE COURT: Overrule the objection.

"MR. STONE: Except.

"Q. They could not keep you in unless you or them one put some money up, is that a fact?

"A. According to your talk.

"Q. I'm talking about—If that is not right, you will tell us?

"A. There is cases where it has been different.

"Q. In your particular case, as the market went up, every time it went up a penny that was how much, $900.00 in your case?

"A. $300.00.

"Q. So that if it went up a dime it would be $3,000.00 a day.

"A. Yes.

"Q. On some days it did that during that period of time?

"A. Yes.

"Q. You knew that?

"A. Yes sir.

"Q. You kept promising to send the margin check so they would keep you in the market and you didn't do it?

"A. That is what you say.

"Q. Isn't that correct—I don't want to testify for you; if that isn't correct, you tell the gentlemen—

"A. —That seems to be correct."

We are impressed from the whole of the evidence that defendant sold the soy bean futures through plaintiff with full knowledge gained through 15 years experience in such commodity trading that if he sold on a marginal basis and did not put up money to protect the sale should the market rise, that plaintiff was authorized to close his account by proper procedure in buying a like quantity of soy beans.

It occurs to us from defendant's false telegram that he had mailed check to cover margin and from the other evidence, that defendant wanted to shift his responsibility to put up margin money to plaintiff; that he did not want to get out of the market with respect to the sales here involved. In other words that if a loss occurred, plaintiff would pay, and if a profit, he would benefit to that extent. It appears that defendant wanted to invoke the old adage, "Heads I win, tails you lose."

■ Defendant in our opinion from the evidence knew when he authorized the sales, supra, that his broker, the plaintiff here, had the right to close the account should he fail to make the margin payments and protect plaintiff.

We think the trial court committed reversible errors as charged in Assignments 1, 3, and 4.

■ We do not find from the evidence that defendant ever requested plaintiff to pay the money as alleged in Count 2 of the complaint. But suffice it to say that defendant knew that it was the custom of the broker in a transaction of this kind to pay the money and he impliedly assented thereto when he entered into the transactions of selling the grain through plaintiff.

The judgment of the trial court is reversed and the cause remanded.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit

Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, COLEMAN, BLOODWORTH and Mc-CALL, JJ., concur.